ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| SONIA COLÓN ROLÓN<br><br>APELANTE<br><br>V.<br><br>FAZAA CORPORATION<br><br>APELADO | KLAN202400624 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm. SJ2023CV04564<br><br>Sobre:<br>Petición de Orden |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, y el Juez Campos Pérez

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de marzo de 2025.

Comparece ante nosotros el señor Faustino Xavier Betancourt Colón (Sr. Betancourt; parte apelante; parte demandante) mediante un recurso de *apelación* y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan, el 23 de mayo de 2024.[1] En ese dictamen, el TPI declaró Ha Lugar la *Moción en solicitud para que se dicte sentencia[2]* presentado por las partes en conjunto, el 23 de mayo de 2024.

Atendidos los escritos titulados *Oposición a "Moción urgente para que se paralicen los procedimientos sujeto a la sustitución de la parte demandante-apelante"* presentado por la parte apelante el 19 de agosto de 2024, *Breve réplica a moción en oposición de moción urgente*, presentado el 21 de agosto de 2024, *Moción de sustitución, solicitud de modificación de epígrafe y continuación de procedimientos,* presentado por la parte apelante el 28 de agosto de 2024, y *Moción informativa sometiendo resolución de declaratoria de herederos*, presentado por la parte apelante el 8 de octubre de 2024, **se toma conocimiento del fallecimiento del Sr. Betancourt**, **se declara ha lugar la solicitud de modificación de epígrafe y de sustitución de parte**, por lo que **se sustituye el nombre**

---

[1] Apéndice del Recurso, págs. 42-45.
[2] Apéndice del Recurso. págs. 39-41.

**del Sr. Betancourt por su señora madre, la señora Sonia Colón Rolón como parte apelante,** conforme a lo dispuesto en la Regla 82(A) del Reglamento del Tribunal de Apelaciones.4 LPRA Ap. XXII-B, R. 82(A).

Adelantamos que por los fundamentos que expondremos a continuación se confirma la sentencia apelada.

**I**

El 16 de mayo de 2023, la parte apelante presentó su *Demanda* en contra de Fazaa Corporation (Fazaa; parte apelada; parte demandada) y solicitó un interdicto permanente bajo lo dispuesto en la sección 12188 de la ley federal titulada *American with Disabilities Act* (ADA), 42 U.S.C. secs. 12101 et seq.[3] Los remedios legales solicitados en la demanda, en detalle, fueron los siguientes:

A. Un interdicto permanente de conformidad con 42 USC §12188 (a) (2) y 28 CFR §36.504 (a) que ordene a la parte demandada eliminar las barreras arquitectónicas que existen en la Propiedad mediante el cumplimiento con las guías de diseño accesible que le sean aplicables según su fecha de construcción y alteración. Si se trata de una propiedad que existía al 26 de enero de 1993, que la propiedad se altere para que esté en cumplimiento con las más recientes gulas de diseño accesible promulgadas en virtud de la ADA [American Disabilities Act] en la medida máxima que sea económicamente viable para el demandado, ya sea inmediatamente o mediante un plan de transición a largo plazo hacia el total cumplimiento. Si la creación de un plan de transición al cumplimiento no es económicamente viable, o si los cambios que son necesarios no son estructuralmente posibles, se solicita que se ordene que el acceso a los bienes y servicios se haga disponible mediante métodos alternos conforme a 42 USC §12182(b)(2)(A)(v).

B. Un interdicto permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la parte demandada a que elimine las políticas y prácticas discriminatorias existentes en la actualidad que impiden la eliminación de las barreras arquitectónicas y/o políticas y prácticas que impiden que se brinden los acomodos razonables que sean necesarios para que haya un trato igualitario.

C. En caso de que la parte demandada continúe su condición discriminatoria, se solicita de conformidad con 42 USC §

---

[3] Apéndice del Recurso. págs.1-8.

12188 (a) (2) y 28 CFR § 36.504, que se ordene el cierre y clausura de la Propiedad como medida cautelar para detener la condición discriminatoria hasta tanto se haya acreditado de manera fehaciente y a satisfacción del tribunal que se ha eliminado el discrimen.

D. Daños dignatarios por la cantidad de un dólar o mediante un pronunciamiento judicial que declare que la dignidad de la parte demandante fue agraviada.

E. Honorarios de abogado, costas y gastos de litigio, de la parte demandante prevalecer en sus reclamos.

F. La provisión de cualquier otro remedio que sea justo y propio, en ley o equidad, y que no haya sido expresamente solicitado, pero que proceda como cuestión de derecho y conforme a la Regla 42.4 de las Reglas de Procedimiento Civil de Puerto Rico.[4]

El 23 de junio de 2023, la parte demandada presentó su *Contestación a Demanda* en el cual realizó sus respectivas alegaciones responsivas y levantó sus defensas afirmativas.[5] El 11 de mayo de 2023, Fazaa presentó una *Moción Informativa* que expresa las intenciones de la corporación en corregir las violaciones del ADA en sus facilidades sanitarias.[6]

El 17 de mayo de 2024, el TPI notificó una *Minuta* sobre la **Conferencia con Antelación a Juicio y Vista Transaccional, celebrada el 16 de mayo de 2024,** la cual informa que las partes llegaron a un acuerdo transaccional para culminar con el pleito.[7] El 23 de mayo de 2024, las partes en conjunto presentaron la *Moción solicitando se dicte sentencia por consentimiento*, en la cual acordaron una serie de estipulaciones para darle fin a todas las controversias y el caso respectivamente.[8] En esa misma fecha, el Tribunal emitió una *Sentencia* donde aprueba el acuerdo transaccional que llegaron las partes y archivó la causa de acción con perjuicio.[9] Además, el Tribunal de Primera Instancia, en su discreción no impuso costas, gastos u honorarios de abogado.[10]

---

[4] Apéndice del Recurso, págs. 7-8.
[5] Apéndice del Recurso, págs. 10-16.
[6] Apéndice del Recurso, págs. 18-25.
[7] Apéndice del Recurso, págs. 28-29.
[8] Apéndice del Recurso, págs. 39-41.
[9] Apéndice del Recurso, pág. 45.
[10] *Id.*

En la misma fecha que se dictó la *Sentencia*, la parte demandante presentó el escrito titulado *Solicitud de Reconsideración de Sentencia*, en el cual expuso que no está de acuerdo en cuanto a lo dispuesto por el foro sentenciador al aceptar el acuerdo transaccional sin imposición de costas, gastos y honorarios de abogado.[11] El 24 de mayo de 2024, la parte apelada presentó el escrito titulado *Oposición a Moción de Reconsideración*, en el cual expresó que la parte apelante redactó y revisó los borradores del acuerdo transaccional y que ahora no puede pretender modificar el acuerdo. [12] Añade, que de permitirse dicha alteración retiraría el consentimiento a dicha transacción.[13] El Tribunal emitió una *Orden* el 24 de mayo de 2024, notificada el 28 de mayo de 2024, en el cual declaró No Ha Lugar la moción de reconsideración.[14]

Inconforme, la parte apelante presentó el 27 de junio de 2024 el recurso de apelación ante nosotros, en el cual expone el siguiente señalamiento de error:

> ERRÓ EL TPI AL ALTERAR EL ALCANCE DE LAS ESTIPULACIONES DEL ACUERDO TRANSACCIONAL EXCLUYENDO EXPRESAMENTE LA POSIBILIDAD DE SOLICITAR LA IMPOSICIÓN DE COSTAS, GASTOS Y HONORARIOS DE ABOGADO A FAVOR DE LA PARTE PREVALECIENTE DE CONFORMIDAD CON 42 U.S.C § 12205.

La parte apelada presentó su alegato el 29 de julio de 2024.

Atendidos los escritos titulados *Oposición a "Moción urgente para que se paralicen los procedimientos sujeto a la sustitución de la parte demandante-apelante"* presentado por la parte apelante el 19 de agosto de 2024, *Breve réplica a moción en oposición de moción urgente*, presentado el 21 de agosto de 2024, *Moción de sustitución, solicitud de modificación de epígrafe y continuación de procedimientos,* presentado por la parte apelante el 28 de agosto de 2024, y *Moción informativa sometiendo resolución de declaratoria de herederos*, presentado por la parte apelante el 8 de octubre de 2024, se declara ha lugar la solicitud de modificación de

---

[11] Apéndice del Recurso, págs. 46-47.
[12] Apéndice del Recurso, págs. 48-49.
[13] *Id.*
[14] Apéndice del Recurso, pág. 50.

epígrafe y de sustitución de parte, por lo que se toma conocimiento del fallecimiento del sustituye

Con el beneficio de los escritos de ambas partes, resolvemos.

**I**

**A: Ley ADA**

La Ley ADA, *supra*, fue creada con el propósito de eliminar la discriminación que sufren individuos con discapacidad en distintos ámbitos de la sociedad como lo sería en el empleo, transportación, educación y el acceso a la salud. 42 U.S.C § 12101. El estatuto define la discapacidad como sigue:

> *(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;*
> *(B) a record of such an impairment; or*
> *(C) being regarded as having such an impairment.* 42 U.S.C § 12102.

En lo pertinente, el Título III de la Ley ADA dispone que entidades privadas no pueden discriminar contra personas en el disfrute pleno e igualitario de los bienes y servicios ofrecidos en instalaciones públicas por razón de su discapacidad. 42 U.S.C § 12182(a). Por ejemplo, el no remover barreras arquitectónicas cuando sean *fácilmente alcanzable* consiste en un acto discriminatorio según las disposiciones de la Ley ADA. 42 U.S.C § ad

En cuanto a la imposición de costas y honorarios en la litigación de los casos sobre reclamaciones de daños bajo lo dispuesto en la ADA, se debe solicitar conforme en el proceso aplicable a las reclamaciones aplicables bajo esa ley.

**B. Acuerdo transaccional:**

En *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 D.P.R. 860, 870–871 (1995) se pautó lo siguiente:

> La transacción es un contrato por el cual las partes, mediante recíprocas concesiones, evitan la provocación de un pleito o ponen fin al que había comenzado. Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821. De esta definición se desprende que son dos (2) los presupuestos necesarios para que un contrato pueda calificarse como de transacción: que exista una situación de controversia entre dos (2) o más personas, y la necesidad de recíprocas concesiones entre ellas. De ahí también se deduce que existen dos (2) clases de contratos de transacción: el judicial y el extrajudicial. Si, antes de

comenzar un pleito, las partes acuerdan eliminar la controversia mediante un acuerdo, nos encontramos ante un contrato de transacción extrajudicial. Aunque puede ocurrir que, estando aún el pleito pendiente, las partes acuerden una transacción sin la intervención del tribunal. En ese caso, existe también un contrato de transacción extrajudicial y bastará un mero aviso de desistimiento. En cambio, si la controversia degenera en un pleito y, luego de éste haber comenzado, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, estamos ante un contrato de transacción judicial que tiene el efecto de terminar el pleito. J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Rev. Jur. U.I.A.P.R., 1990, T. IV, Vol. II, pág. 498.

Mediante las transacciones judiciales, las partes ponen fin a una acción e incorporan unos acuerdos al proceso judicial en curso. *Betancourt González y. Dwight Pastrana*, 200 DPR 169, 184(2018). Además, la interpretación de los contratos de transacción es de naturaleza restrictiva. *Demeter Int'l v. Srio. Hacienda*, 199 DPR 706, 731(2018).

**III**

La parte apelante nos señala que el foro sentenciador se equivocó "al **alterar el alcance de las estipulaciones del acuerdo transaccional** excluyendo expresamente la posibilidad de solicitar la imposición de costas, gastos y honorarios de abogado a favor de la parte prevaleciente de conformidad con 42 USC § 12205." No tiene razón.

Al examinar el apéndice del recurso ante nuestra consideración y el expediente electrónico en SUMAC, vemos que luego de los trámites procesales entre las partes sobre descubrimiento de prueba, surge una oferta de transacción presentada por FAZAA. Así las cosas, el foro apelado señaló la **Conferencia con Antelación a Juicio y Vista Transaccional celebrada el 16 de mayo de 2024**. En esa vista, ambas partes reconocieron que estaban en negociaciones dirigidas a culminar el caso, por lo que la parte demandante solicitó "un término de 10 días para someter el acuerdo transaccional y así el Tribunal pueda dictar sentencia."[15] Luego, surge del apéndice del recurso que intercambiaron correos electrónicos para presentar el documento ante el Tribunal.

---

[15] Apendice pág. 28.

El 23 de mayo de 2024, las partes en conjunto presentaron la *Moción solicitando se dicte sentencia por consentimiento*, en la cual exponen lo siguiente:

> Las partes específicamente acuerdan que el cumplimiento con la presente transacción pone fin a todas las controversias pendientes de adjudicación por el Tribunal en este caso entre las partes comparecientes, y dan fe de haber legado a la presente estipulación de forma libre y voluntaria, debidamente orientadas por sus respectivos abogados y con pleno conocimiento de su alcance legal, y reconocen haber sido advertidas que la misma constituye un contrato que ambas se han obligado a cumplir estrictamente.
>
> Se acuerda por las partes que el tribunal mantendrá su jurisdicción en este caso para supervisar los trabajos, obras y alteraciones en el baño de la cafetería ACAA. Una vez culminados, Fazaa Corporation debe certificarle al Tribunal que se ha cumplido con todos los trabajos establecidos, haciendo claro que el Tribunal podrá llevar a cabo una inspección ocular de las instalaciones para corroborar dicho cumplimiento.[16]

Sin embargo, la parte apelante reclama en su recurso que se revoque la Sentencia emitida y notificada el 23 de mayo de 2024 parcial y únicamente sobre la exclusión de imposición de costas, gastos u honorarios conforme al acuerdo transaccional sometido al Tribunal.

Nos convence lo expuesto en el Alegato de la parte apelada, que se cita como sigue:

> La determinación del TPI en su Sentencia (además de imprimir validez a los acuerdos entre las partes) de no imponer costas, gastos u honorarios de abogado, no puede ser óbice para restar validez a los acuerdos negociados de los partes, validados por el TPI. Tal solicitud daría al traste con unas estipulaciones acordadas; más aún cuando la parte apelada está en proceso de culminar su responsabilidad conforme al acuerdo. No hay razón alguna para dar atrás a lo alcanzado para determinar si a las partes les asiste el derecho a que se le concedan honorarios de abogados y costas.
>
> Lo acordado y consignado en el proyecto de sentencia presentado a la consideración del TPI fueron redactados por la representación legal de la parte apelante, considerados por ambos y modificados solo en cuanto al término para la realización de los trabajos allí descritos; y su inclusión como parte de la Sentencia no está bajo discusión; no son determinaciones contrarias al derecho o moral pública, por lo que tampoco debe ser objeto de modificación.[17]

---

[16] Apendice pág. 34.
[17] *Alegato de la parte apelada*, págs. 3-4.

Resolvemos que no se cometió el error señalado.

**IV**

Por lo ates expuesto, se confirma la sentencia apelada.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones